## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY,
962 Wayne Ave, Suite 610
Silver Spring, MD 20910

CENTER FOR ENVIRONMENTAL
HEALTH,
2201 Broadway, Suite 508
Oakland, CA 94612

*Plaintiffs*,

v.

ENVIRONMENTAL PROTECTION
AGENCY
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

*Defendant.*

CIVIL ACTION NO. 24-00445

**COMPLAINT**

## PRELIMINARY STATEMENT

1. Public Employees for Environmental Responsibility ("PEER") and Center for
   Environmental Health ("CEH") (collectively "Plaintiffs") bring this action under the
   Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and the Declaratory
   Judgment Act ("DJA"), 28 U.S.C. §§ 2201, et seq. Plaintiffs seek to compel the United
   States Environmental Protection Agency ("Defendant" or "EPA") to disclose
   documents and information they requested pursuant to FOIA, including all
   responsive non-exempt material, and specifically including material that EPA is

required to make available to the public pursuant to Section 14 of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2613. Plaintiffs are seeking documents in EPA's possession relating to the formation of Per- and Polyfluoroalkyl Substances ("PFAS"), specifically long-chain perfluoroalkyl carboxylate ("LCPFAC") substances, during the fluorination of plastic containers by Inhance Technologies LLC ("Inhance").

2. PEER and CEH submitted a FOIA request on January 5, 2023, seeking a broad range of documents in EPA's possession related to Inhance's formation of LCPFACs during fluorination. EPA has produced some but not all of the requested documents. Many of the documents that were produced contain extensive redactions of test data and other information claimed as confidential business information ("CBI") by Inhance. However, the redacted material is not subject to CBI protection pursuant to section 14 of TSCA and thus cannot be withheld under FOIA Exemption (b)(4).

3. To date, Defendant has failed to make a final determination on Plaintiffs' FOIA request or to disclose to Plaintiffs all of the non-exempt material responsive to their FOIA request.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

5. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

6.   This District is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

7.   This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E)(i).

## PARTIES

8.   Plaintiff PEER is a national non-profit public interest organization incorporated in Washington, D.C., and headquartered in Silver Spring, Maryland, with field offices in California, Colorado, and Massachusetts.

9.   Among other public interest projects, PEER engages in advocacy, research, education, and litigation relating to the promotion of public understanding and debate concerning key current public policy issues. PEER focuses on the environment, including the regulation and remediation of toxic substances, public lands and natural resource management, public funding of environmental and natural resource agencies, and governmental accountability.  PEER educates and informs the public through news releases to the media, through its web site, www.peer.org, and through publication of the *PEEReview* newsletter.

10. Plaintiff CEH is a national non-profit organization headquartered in Oakland, California, dedicated to protecting the public from environmental and public health hazards, including harmful chemicals in air, food, water, and in everyday products. It envisions a world where everyone lives, works, learns, and plays in a healthy environment.

11. For 27 years, CEH has worked to protect people and the environment from toxic chemicals by engaging with communities, consumers, workers, government, and the private sector to demand and support business practices that are safe for public and environmental health. Its work has been featured in numerous local, state, national and global news outlets. In 2022, CEH's work was mentioned in 1092 news articles (roughly 91/month). CEH engages with organizations and members of the public from the grassroots to the global level, and shares information via listservs with a large number of networks and coalitions, and through in-person and virtual events.

12. Defendant EPA is an agency of the United States as defined by 5 U.S.C. § 552(f)(1).

13. Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of FOIA. Defendant's refusal to provide information required to be disclosed under TSCA is a violation of FOIA.

## STATEMENT OF FACTS

14. On January 5, 2023, PEER submitted a FOIA request to EPA seeking:

    1. EPA's January 14, 2021, subpoena to Inhance;
    2. Inhance's February 1 and 8, 2021, responses to the January 14, 2021, subpoena;
    3. Any other responses by Inhance to the January 14, 2021, subpoena;
    4. All data, protocols, analyses, and tests conducted by Inhance or outside laboratories, submitted to EPA by Inhance or otherwise in EPA's possession with respect to the formation of LCPFAC and other PFAS during fluorination and the presence of these substances in plastic containers fluorinated by Inhance;
    5. Other information about the fluorination process submitted to EPA by Inhance relating to or reflecting the presence of PFAS in containers fluorinated by Inhance;
    6. All risk assessments or analyses conducted by or for Inhance submitted to EPA regarding the human health impacts of PFAS present in containers fluorinated by Inhance;

7. All other data, protocols, analyses, risk assessments or other information in EPA's possession referring or relating to the presence of PFAS in plastic containers fluorinated by Inhance;

8. Emails, phone logs, text messages, instant message chats, or other communications between EPA and Inhance referring or relating to the presence of PFAS in containers fluorinated by Inhance;

9. Documents or other information provided to EPA by Inhance referring to, describing, or relating to any changes in its fluorination process affecting or intended to affect the levels of PFAS in fluorinated containers;

10. The Notice of Violation ("NOV") issued by EPA to Inhance on March 1, 2022;

11. All data and information about Inhance's fluorination process, analyses, or other testing submitted by Inhance to EPA in response to the March 1, 2022, NOV;

12. Any significant new use notice ("SNUN"), and all attachments and accompanying information, submitted to EPA by Inhance under the LCPFAC SNUR;

13. All emails, text messages, instant message chats, and other communications between EPA and Inhance relating to any SNUN submitted by Inhance under the LCPFAC SNUR; and

14. All documents created by EPA, or its contractors, assessing or analyzing the significant new use activities described in any SNUN submitted by Inhance under the LCPFAC SNUR or any information therein, including. but not limited to, documents relating to the human health or environmental impacts of PFAS present in plastic containers fluorinated by Inhance.

15. The request sought documents created between July 27, 2020, and January 5, 2023.

16. On January 5, 2023, EPA assigned the FOIA request tracking number EPA-2023-001593.

17. On January 13, 2023, the EPA emailed PEER and CEH purporting to extend the FOIA production due date by six months to August 3, 2023.

18. On January 19, 2023, EPA emailed a letter to PEER, dated January 18, 2023, that fully granted PEER and CEH's fee waiver request. PEER emailed EPA to schedule a phone call to discuss the FOIA request. EPA responded that it had begun reaching out to offices that may have relevant documents and asked to meet first with Office of

Chemical Safety and Pollution Prevention ("OCSPP"), Office of Pollution Prevention and Toxics ("OPPT"), New Chemicals Division before meeting with PEER.

19. On January 20, 2023, EPA emailed an Unusual Circumstance letter to PEER, stating that the estimated completion date would be August 3, 2023.

20. On January 23, 22023, PEER followed up with EPA to schedule a phone call to discuss the FOIA request.

21. On January 24, 2023, PEER and EPA discussed the FOIA request on the phone. Afterwards, PEER emailed EPA, supplying the following search terms for e-discovery, in addition to "PFAS" and "Inhance": "fluor" and "LCPFAC." EPA confirmed it would use the following search string: ("PFAS" OR "*fluor*" OR "LCPFAC") AND "Inhance".

22. On January 31, 2023, PEER emailed EPA, confirming the search string was acceptable and asked that "long-chain" or "perfluoroalkyl" be added to the parenthetical. EPA confirmed those additional terms would be included in the search string.

23. On February 16, 2023, PEER emailed EPA, asking that certain disclosures be prioritized, particularly Significant New Use Notice ("SNUN") attachments. EPA confirmed receipt of the request.

24. On February 22, 2023, EPA emailed PEER, stating that it was waiting to hear back from OCSPP, OPPT New Chemicals Division regarding the PEER and CEH priority request.

25. On March 8, 2023, EPA emailed PEER with an update, stating EPA would undergo a proprietary/confidential information review process to determine what materials might be releasable.

26. On March 9, 2023, PEER confirmed receipt of EPA's email.

27. On April 13, 2023, PEER emailed EPA, stating its new SNUN priorities, since the previously requested priorities had been posted on ChemView, an EPA website. Specifically, PEER requested:

   - Attachment 3: Statement on the Presence of SNUN Substances in Fluorinated HDPE Containers

   - Attachment 6: Calculation of the Amount of LCPFACs Produced and Estimates of Maximum Annual Production

   - Attachment 5: Diagram of the Fluorination of HDPE Containers and Worker Activities Associated with Production Steps

   - Attachment 9: Occupational exposure

   - Attachment 4: Fluorination process

   - Attachment 7: Environmental Release and Disposal

   - Attachment 26: Analytical Results Comparison

   - Attachment 12: risk assessment

PEER stated that these SNUN attachments should be fairly easy to un-redact, because TSCA section 14(b) identifies information that may not be protected as CBI. Additionally, PEER requested that production begin in ten working days, or it would consider litigation.

28. On April 14, 2023, EPA responded with an update, indicating that it would create a FOIAonline Proprietary Business Information (PBI) request for the SNUN documents.

29. On April 19, 2023, EPA emailed PEER, stating that it would have to submit a new FOIA request for the new SNUN priorities.

30. On April 28, 2023, PEER emailed EPA, stating its concerns about submitting a new FOIA request. PEER also listed additional priorities for production, specifically:

   1) EPA's January 14, 2021, subpoena to Inhance;
   2) Inhance's February 1 and 8, 2021, responses to the January 14, 2021, subpoena;
   3) any other responses by Inhance to the January 14, 2021, subpoena; and
   10) the Notice of Violation ("NOV") issued by EPA to Inhance on March 1, 2022,   and letters or other submissions by Inhance in response to the notice.

   PEER also highlighted the fact that it had yet to receive any production and requested a meeting with EPA's Office of General Counsel ("OGC").

31. On May 1, 2023, EPA emailed PEER, stating that EPA would need to file a PBI FOIAonline request for the unredacted SNUN attachments. Any sanitized (i.e. with information claimed to be CBI by Inhance redacted) materials that were submitted by Inhance would be posted to ChemView within an approximately five-day period. Additionally, EPA would work to provide the responsive materials concerning specific request items #1-3 and 10 as an interim release.

32. On May 3, 2023, EPA stated it would no longer require PEER to submit a new FOIA request for the new SNUN documents. PEER confirmed receipt of the information.

33. On May 3, 2023, EPA sent an email to PEER regarding the portions of the SNUN attachments that were initially withheld under FOIA Exemption 4 in response to

FOIA request EPA-2023-001593. OGC assigned this final confidentiality determination the following tracking number: EPA-2023-002924. In April of 2023, the SNUNs were made publicly available on ChemView. Because the withheld information was made publicly available, EPA considered the final confidentiality determination to be moot and closed this file.

34. On May 3, 2023, EPA emailed PEER with next steps regarding Exemption 4 withholdings:

> "As we create the FOIAonline PBI case for the eight other unredacted SNUN attachments – and as I had done for your previous request for 12 unredacted SNUN attachments – we provide the initial denial as we undergo a proprietary/confidential information review process to determine what materials might be releasable to you. Our official response follows:
>
> - The information withheld under Exemption 4 will be sent to the appropriate legal office to issue a final confidentiality determination. The appropriate legal office will contact you to confirm your continued interest in receiving a final confidentiality determination and provide you with a fee estimate, where appropriate. Therefore, you do not need to appeal the information withheld pursuant to Exemption 4."

To PEER and CEH's knowledge, there has been no final disposition on this issue.

35. On May 25, 2023, EPA emailed PEER with an update on the non-Confidential Business Information ("CBI") review process:

> "The non-CBI (regular admin) emails/attachments are in the review cycle. We are preparing both Office of Chemical Safety and Pollution Prevention (OCSPP) sanitized CBI LAN materials and Office of Enforcement and Compliance Assurance (OECA) sanitized CBI LAN materials for interim release to you. We have the documents, they are undergoing exemption review, and we need to provide them to the Department of Justice (DOJ) for a quick check and then we have a short EPA managerial check for those materials. Then we will continue with additional interim releases."

PEER confirmed receipt of the information and requested a time frame for production. EPA responded that the release should occur on June 14, 2023.

36. On May 26, 2023, EPA emailed PEER with an update: that the recommendation to skip the 5-business-day OPPT equity review was approved and DOJ confirmed that it should only take them a couple days for their review.

37. On May 30, 2023, EPA emailed PEER with an update: EPA shared the 17 responsive documents that relate to specific request items #1-3, 10, and 13 with the Department of Justice, which would be followed by the EPA OPPT and upper manager reviews prior to release.

38. On June 1, 2023, PEER confirmed receipt of the updated information on the review process.

39. On June 15, 2023, EPA provided PEER with the first interim release, containing three documents: OCSPP SNUN receipt confirmation letter, Office of Enforcement and Compliance Assurance ("OECA") subpoena, and OECA notice of violation.

40. On June 16, 2023, PEER confirmed receipt of the first interim release.

41. On July 12, 2023, PEER emailed EPA asking for updates on the remaining interim releases. EPA responded with the following updates:

"Our OECA team is finishing a full exemption review for the 10 documents and I'm hoping to receive approval from them by this Friday, and then we'll have a 3-day manager awareness period before releasing that second interim release to you. The CBI exemption review was already complete and approved for those 10 documents by EPA and DOJ and so we just need the OECA team to complete their part. We'll follow that release with a third interim release and I'm working to determine how many documents will be in that third release."

42.  On July 13, 2023, EPA emailed PEER with a more substantive update:

- "2nd Interim Release: We have full exemption approval on the 10 OECA documents. The plan is tomorrow to send to manager awareness for 3 business days, which should result in the second interim release provided to you late afternoon next Wednesday the 19th.
- 3rd Interim Release: OECA has an additional ~ 200 sanitized documents from the CBI LAN that are brought into our Relativity system for review (with exemptions/redactions added). We have begun the process, and I will provide updates to you.
- Emails/Attachments from eDiscovery Search for Review in Relativity: The eDiscovery search for potentially responsive records was completed and the records are set up in a Relativity workspace for review. Records will be classified according to responsiveness and, if responsive, whether any exemptions/redactions apply. Unfortunately, due to generally limited staff as result of budget cuts over the years, there is a review queue and I'll let you know once review begins."

43.  On July 17, 2023, EPA emailed PEER, stating the second interim release was delayed by one business day.

44.  On July 20, 2023, EPA provided PEER with the second interim release. Of the ten documents provided, eight contained redactions pursuant to Exemption 4 CBI. Some documents were partially redacted, while others were heavily redacted. Redactions appeared to be regarding testing information and the fluorination process used by Inhance.

45.  On August 2, 2023, PEER confirmed receipt of the second interim release and asked for an update on the third interim release. EPA provided the following update:

- "3rd Interim Release: Our IT personnel have the 197 sanitized documents from the CBI LAN in our Relativity system and the documents are almost ready for review (where we'll classify documents according to responsiveness and whether exemptions/redactions apply).
- Emails/Attachments from eDiscovery Search for Review in Relativity: I'm checking on a timing estimate regarding when records will be reviewed and will let you know what I learn."

46. On August 3, 2023, EPA sent a Continuing Unusual Circumstance Letter to PEER, stating that it would complete the FOIA request by December 1, 2023.

47. On August 24, 2023, PEER confirmed receipt of EPA's update. EPA responded back the same day, stating that "OECA is reviewing 196 sanitized CBI LAN documents (and not 197 documents because 1 was a duplicate). For the non-CBI LAN emails/attachments, we have 1,931 documents in the queue and awaiting first-level review."

48. On September 21, 2023, EPA emailed PEER with an update: "OECA is reviewing the 196 sanitized CBI LAN documents and OECA just provided me with an additional 93 OECA sanitized CBI LAN documents that we are importing into our Relativity review workspace. We're planning to release the 196-document review as interim release #3 and the 93-document review as interim release #4. The 1,931 documents from the Admin (non-CBI) LAN are still in the queue and waiting for first-level review."

49. On October 12, 2023, PEER emailed EPA asking for an update. EPA responded that the third interim release was in production and that a time estimate would be provided the following day.

50. On October 13, 2023, EPA emailed PEER the following update: "We are processing 197 sanitized OECA CBI LAN documents that we will provide as your FOIA's third interim release. The documents were just approved this afternoon by DOJ. We do not need any intra-agency or other inter-agency equity reviews, but we will need a 3-

business-day awareness notification for EPA managers. One variable is that we are currently without a FOIA system at the moment because FOIAonline was our management system for many years before being de-commissioned September 29, and the new FOIAXpress system is anticipated to be functional this coming Tuesday, October 17. So we'll need the new system operational to send the documents to you."

51. On October 23, 2023, EPA emailed PEER the following update: "Because we're still waiting for the new FOIAXpress system to become active, we're going to bypass that mechanism and instead provide the 198 documents in the 3rd interim release to you through an EPA shared server. The 198 documents just began the 3-day awareness notification to upper managers and we anticipate providing the documents to you this Thursday the 26th."

52. On October 26, 2023, EPA provided PEER with the third interim release. Of the 198 documents provided, the vast majority contained redactions of PFAS test levels pursuant to Exemption 4 CBI.

53. On October 27, 2023, EPA uploaded Inhance's latest SNUN submissions to ChemView; however, the submissions had been received by EPA nearly a month earlier, on September 29, 2023. The SNUN submissions represented a purported response to a portion of Plaintiffs' FOIA request but contained extensive redactions. The redactions covered test data on the presence of PFAS in fluorinated containers, customer/use information and nearly all of a detailed economic impact analysis

54. On November 6, 2023, PEER emailed EPA, expressing serious legal concerns with the withholdings based on claims of CBI.  PEER asked for a meeting with OGC. EPA responded that they would reach out to OGC.

55. On November 7, 2023, EPA emailed PEER, stating that OGC was reviewing the materials.

56. On November 8, 2023, Counsel for PEER and CEH emailed EPA with a letter PEER and CEH wrote to Michal Freedhoff, Assistant Administrator of OCSPP, outlining concerns that redacted SNUN materials comprised health and safety studies and other information that EPA was required to disclose under section 14 of TSCA. Counsel for PEER and CEH asked EPA to pass the letter on to OGC. EPA confirmed it passed the letter on to OGC.

57. On November 21, 2023, PEER and CEH met with OGC to discuss its concerns about the FOIA request and redacted CBI. Counsel made a Powerpoint Presentation to EPA describing the redacted information and explaining the TSCA provisions requiring its disclosure.

58. On November 28, 2023, EPA emailed PEER and CEH, stating that it spoke with OGC and was working on the fourth interim release.

59. On November 29, 2023, PEER and CEH counsel wrote to OGC summarizing the key points presented at the November 21 meeting and urging EPA to make a "class determination" under its CBI regulations for the test data and other information they believed were required to be disclosed under section 14 of TSCA.

60. OGC acknowledged receipt of the letter from PEER and CEH counsel by email on November 30, 2023.

61. On November 30, 2023, PEER and CEH also emailed EPA asking for clarification on which parts of the FOIA request the fourth interim release would fulfill and when the remaining production was expected to be released. EPA responded that it was working on a timeline for release.

62. On December 1, 2023, OGC sent an email to PEER and CEH counsel responding to their November 29, 2023, letter. The email indicated that "OGC will start the CBI process for the responsive company submissions while the program reviews the remaining potentially responsive material" but cautioned that the "the CBI determination process can take some time given the large volume of records and the issues involved" and that the "company will have an opportunity to substantiate its CBI claims." OGC did not address the disclosure requirements in section 14 of TSCA that superseded CBI protections. The email indicated that OGC would "provide an estimated schedule for processing the information claimed as confidential in the company submissions" but no such schedule has been shared with PEER and CEH.

63. On December 1, 2023, EPA emailed PEER, stating that the fourth interim release would be made available on December 8, 2023. Additionally, after that production, EPA had approximately 1,900 potentially responsive records left to review. These remaining records consisted mainly of potentially responsive email communications. EPA planned to review approximately 500 records per month and provide a

production in February, and monthly after that. EPA also sent another email stating that final production could be expected by June 1, 2024.

64. On December 1, 2023, PEER and CEH submitted a new FOIA request supplementing their initial January 5, 2023, FOIA request. The new request extended the timeframe covered by the initial request to the present.

65. On December 7, 2023, EPA stated that PEER and CEH "should see a communication from FOIAXpress today that contains a fourth interim release letter along with its 81 responsive documents."

66. On December 8, 2023, EPA provided PEER and CEH with the fourth interim release. Of the 81 documents provided, the vast majority contained redactions of PFAS test results pursuant to Exemption 4 as CBI. For example, the results of the Chemical Test Reports for HDPE Chips and other samples were completely redacted.

67. On December 21, 2023, EPA followed up with PEER and CEH, stating that "interim release #4's 81 documents relate to specific request item #4 that follows:

All data, protocols, analyses, and tests conducted by Inhance or outside laboratories, submitted to EPA by Inhance or otherwise in EPA's possession with respect to the formation of LCPFAC and other PFAS during fluorination and the presence of these substances in plastic containers fluorinated by Inhance."

68. On December 22, 2023, counsel for PEER and CEH responded by email to OGC's December 1, 2023 email. This response expressed "disappoint[ment] that EPA still fails to recognize the categorical TSCA exemptions from CBI protection for two classes of information that account for large portions of the Inhance documents" and reiterated that "[f]or CBI claims that fall within these exemptions, a document-by-

document review is inefficient and unnecessary" and a "class determination" would expedite disclosure. The response also noted EPA's December 1, 2023 "determination that PFAS formed during the fluorination of plastic containers present an unreasonable risk of injury to health and the environment and issuance of orders under TSCA sections 5(e)  and 5(f) prohibiting Inhance from producing PFAS during its fluorination process." These developments, the email maintained, reinforced "the strong public interest in expedited disclosure of test data on the levels of PFAS in fluorinated containers to which workers and consumers are exposed and the range of products packaged in these containers that people use on a daily basis." As an additional ground for disclosure, the email cited TSCA section 14(d)(3), which provides that CBI "shall be disclosed if the Administrator determines that disclosure is necessary to protect health or the environment against an unreasonable risk of injury to health or the environment."

69. On December 22, 2023, EPA followed up with additional information about interim release #4:

- "As previously stated, 80 of the 81 documents relate to specific request item #4.
- The remaining 1 document (attached) relates to specific request item #2 that follows:
    - Inhance's February 1 and 8, 2021, responses to the January 14, 2021, subpoena;"

70. PEER and CEH have yet to receive the remaining responsive records or a final determination on FOIA Request EPA-2023-001593 and no unredacted documents have been produced in accordance with the disclosure requirements of section 14 of TSCA.

## **CAUSE OF ACTION**

71. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

### Relevant Provisions of FOIA

72. FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information. FOIA reflects a "profound national commitment to ensuring an open Government" and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

73. FOIA requires agencies to determine within twenty working days after the receipt of any FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). Agencies may only extend this time period for an additional ten working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

74. Twenty working days from January 5, 2023, (the date PEER submitted its FOIA request) was February 2, 2023.

75. *With an additional ten working days for "unusual circumstances," the date was February 16, 2023.

76. As of the date of this filing, Plaintiffs have not received a final determination on their FOIA request and Defendant has not made all of the records "promptly available."

77. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its January 2023 FOIA request, PEER now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

78. Moreover, the Court may consider both the failure to complete production on the FOIA request and improper withholding and redactions in the documents produced. *Murphy v. Exec. Office for United States Attys.*, 789 F.3d 204 (D.C. Cir. 2015).

<u>Relevant Provisions of TSCA</u>

79. Section 14(a) of TSCA, 15 U.S.C. § 2613(a) directs that EPA "shall not disclose information that is exempt from disclosure" under FOIA exemption (b)(4) "[e]xcept as provided in this section."

80. Section 14(b)(2) of TSCA, 15 U.S.C. § 2613(b)(2), lists as "information not protected from disclosure" "Information from health and safety studies." As stated in section 14(b)(2):

Subsection (a) does not prohibit the disclosure of—

(A) any health and safety study which is submitted under this chapter with respect to—

(i) any chemical substance or mixture which, on the date on which such study is to be disclosed has been offered for commercial distribution; or (ii) any chemical substance or mixture for which testing is required under section 2603 of this title or for which notification is required under section 2604 of this title; and

> (B) any information reported to, or otherwise obtained by, the Administrator from a health and safety study which relates to a chemical substance or mixture described in clause (i) or (ii) of subparagraph (A)

81. Section 14(b)(3) of TSCA, 15 U.S.C. § 1613(b)(3), provides a further exemption from CBI protection as follows:

Subsection (a) does not prohibit the disclosure of—

> any general information describing the manufacturing volumes, expressed as specific aggregated volumes or, if the Administrator determines that disclosure of specific aggregated volumes would reveal confidential information, expressed in ranges; or

> a general description of a process used in the manufacture or processing and industrial, commercial, or consumer functions and uses of a chemical substance, mixture, or article containing a chemical substance or mixture, including information specific to an industry or industry sector that customarily would be shared with the general public or within an industry or industry sector.

82. Section 14(b)(5) of TSCA, 15 U.S.C. § 2613(b)(5), provides that if EPA receives a FOIA request for information "that is not protected from disclosure under this subsection, the Administrator *may not deny the request* on the basis of" the CBI protections in FOIA exemption 4 (emphasis supplied).

83. Section 14(f)(2) provides that EPA "shall review a claim for protection of information" on CBI grounds where "necessary to determine whether the information" should be disclosed in response to a FOIA request.

84. Section 14(g)(1)(A) sets a 90-day deadline by which EPA "must review and approve, approve in part and deny in part, or deny" CBI claims. Under section 14(g)(1)(G), EPA may discharge this obligation by "review[ing] a representative subset, comprising at least 25 percent, of" requests for CBI protection.

85. Under 40 C.F.R. § 716.3, "the term health and safety study [must] be interpreted broadly" and includes "[a]ny data that bear on the effects of a chemical substance on health or the environment."

86. The definition includes: "Assessments of human and environmental exposure"; 40 C.F.R. 716.3, and "Monitoring data, when they have been aggregated and analyzed to measure the exposure of humans or the environment to a chemical substance or mixture." 40 C.F.R. 716.3.

<u>Violations of TSCA and FOIA</u>

87. All test data on the presence of LCPFACs in plastic containers fluorinated by Inhance is part of a "health and safety study" or "information reported to, or otherwise obtained by" EPA from such a study and is therefore required to be disclosed under section 14(b)(2) of TSCA and may not be withheld under Exemption 4 of FOIA, notwithstanding Inhance's claims of CBI protection.

88. By withholding test data and related materials under FOIA despite the lack of CBI protection under section 14(b)(2) of TSCA, EPA is in violation of section 14(b)(5) of TSCA  and of FOIA.

89. Furthermore, Section 14(b)(3) of TSCA provides that CBI protection is unavailable for "any general information describing manufacturing volumes, expressed as specific aggregated volumes" and "a general description of . . . industrial, commercial or consumer functions and uses . . . of an article containing a chemical substance or mixture."

90. Inhance's submissions to EPA also contained aggregated data about the uses of fluorinated containers, including:

    a.  the principal end-use categories and applications of fluorinated containers;

    b.  the number of containers and market share associated with these use categories; and

    c.  the intensity of the fluorination treatment applied to the use category.

91. Aggregated data submitted by Inhance to EPA on use categories and volumes of fluorinated containers falls squarely within section 14(b)(3)'s disclosure requirements and is ineligible for CBI protection and withholding under FOIA Exemption 4.

92. By withholding this information under FOIA, despite the lack of CBI protection under section 14(b)(3) of TSCA, and the specific direction in section 14(b)(5) that such materials must be disclosed under FOIA, EPA is in violation of section 14(b)(5) of TSCA and of FOIA.

93. Defendant's conduct amounts to a denial of portions of Plaintiffs' FOIA request and improper withholdings of responsive material with regard to other portions of the request. Defendant is frustrating Plaintiffs' efforts to adequately understand and educate the public regarding EPA's documents regarding the formation of PFAS during the fluorination of plastic containers by Inhance.

94. Plaintiffs have constructively exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i), and now seek an order from this Court requiring the Defendant to immediately produce the records sought in Plaintiffs' FOIA request, including all

material that is not properly subject to a FOIA exemption, as well as other appropriate relief, including attorneys' fees and costs.

95. Defendant's failure to make determinations on or to fully disclose the documents requested in Plaintiffs' FOIA request within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:  Enter an order declaring that Defendant is wrongfully withholding requested agency documents;

   i.   Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld documents;

  ii.   Issue a declaration that health and safety data and aggregated information on the use categories and volumes of fluorinated containers must be disclosed under sections 14(b)(2) and (b)(3) of TSCA and cannot be withheld as CBI under FOIA Exemption 4 under TSCA section 14(b)(5);

 iii.   Maintain jurisdiction over this action until Defendant is in compliance with the FOIA and every order of this Court;

  iv.   Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

   v.   Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on February 15, 2024,

*/s/ Colleen E. Teubner*
Colleen E. Teubner, DC Bar # 90003410

Public Employees for Environmental
Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 464-2293
cteubner@peer.org
*Attorney for Plaintiff PEER*


*/s/ Robert M. Sussman*
Robert M. Sussman DC BAR NO. 226746
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
*bobsussman1@comcast.net*
*Attorney for Plaintiff Center for Environmental*
*Health*