**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, et al.,

*Plaintiffs*,

v.

ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Defendants*.

Civil Action No. 24-445 (JEB)

INHANCE TECHNOLOGIES LLC,

*Plaintiff*,

v.

LEE ZELDIN, in his official capacity as ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Defendant*.

Civil Action No. 25-980 (JEB)

**PLAINTIFF INHANCE TECHNOLOGIES LLC'S MEMORANDUM IN OPPOSITION TO BP POLYMERS' MOTION TO INTERVENE AND TO STRIKE**

Susan M. Cook (D.C. Bar No. 462978)
Adam Kushner (D.C. Bar No. 426344)
Marlan Golden (D.C. Bar No. 1673073)
Jacob T. Young (D.C. Bar. No. 90014334)
Carly M. Heying (D.C. Bar No. 90029062)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
susan.cook@hoganlovells.com

J. Tom Boer (D.C. Bar. No. 469585)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: (415) 374-2336
tom.boer@hoganlovells.com

*Attorneys for Plaintiff Inhance Technologies LLC*

Dated:  November 12, 2025

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. BP POLYMERS DOES NOT MEET THE STANDARDS FOR INTERVENTION AS OF RIGHT ........ 2

A. BP Polymers Has No Cognizable Interest Supporting Intervention ........ 3

B. BP Polymers' Purported Interest Is Not Impaired ........ 4

C. BP Polymers Is Adequately Represented In This Action ........ 6

D. BP Polymers Lacks Standing To Intervene ........ 7

II. BP POLYMERS DOES NOT MEET THE STANDARDS OFR PERMISSIVE INTERVENTION ........ 8

III. THERE IS NO BASIS FOR STRIKING INHANCE'S TWO STATEMENTS REFERRING TO BP POLYMERS FROM ITS SUMMARY-JUDGMENT MOTION ........ 9

A. Inhance's Memorandum In Support Of Summary Judgement Is Not Subject To Rule 12(f) Of The Federal Rules Of Civil Procedure ........ 10

B. Inhance's Statements Are Relevant And Not Prejudicial Or Inflammatory ........ 10

CONCLUSION ........ 13

## TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Bey v. Washington Metropolitan Area Transit Authority*,
341 F. Supp. 3d 1 (D.D.C. 2018) ....10

*Biden v. IRS*,
752 F. Supp. 3d 97 (D.D.C. 2024) ....3

**Bond v. United States Dep't of Justice*,
828 F. Supp. 2d 60 (D.D.C. 2011) ....12, 13

*Center for Biological Diversity v. United States Fish & Wildlife Serv.*,
340 F.R.D. 1 (D.D.C. 2021) ....9

*Crawford v. Barr*,
No. 17-798 (JEB), 2019 WL 6525652 (D.D.C. Dec. 4, 2019) ....12

*Defenders of Wildlife v. Jackson*,
284 F.R.D. 1 (D.D.C. 2012) ....4

*Deutsche Bank Nat'l Trust Co. v. FDIC*,
717 F.3d 189 (D.C. Cir. 2013) ....3, 7

*Environmental Integrity Project v. McCarthy*,
319 F.R.D. 8 (D.D.C. 2016) ....8

*Estate of Fakhoury v. Islamic Republic of Iran*,
No. 21-1218 (JDB), 2022 WL 3355799 (D.D.C. Aug. 15, 2022) ....10, 11

*Floyd v. City of New York*,
302 F.R.D. 69 (S.D.N.Y. 2014) ....3

*Flynn v. Hubbard*,
782 F.2d 1084 (1st Cir. 1986) ....3

*Friends of Earth v. Haaland*,
No. CV 21-2317 (RC), 2022 WL 136763 (D.D.C. Jan. 15, 2022) ....6

*Henok v. Chase Home Fin., LLC*,
925 F. Supp. 2d 46 (D.D.C. 2013) ....10

*Jackson v. Starbucks Corp.*,
No. 19-1487 (RC), 2020 WL 3791873 (D.D.C. July 7, 2020) ....11

* Authorities upon which we chiefly rely are marked with an asterisk.

**TABLE OF AUTHORITIES—CONTINUED**

Page(s)

*Keepseagle v. Vilsack*,
307 F.R.D. 233 (D.D.C. 2014) .......... 9

**Mayor and City of Baltimore v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
738 F. Supp. 3d 1 (D.D.C. 2024) .......... 7, 9

*Moore v. United States*,
318 F. Supp. 3d 188 (D.D.C. 2018) .......... 9

*Nwachukwu v. Rooney*,
362 F. Supp. 2d. 183 (D.D.C. 2005) .......... 10

*Parker v. John Moriarty & Assocs.*,
319 F.R.D. 18 (D.D.C. 2016) .......... 3, 7

*Patton Boggs, LLP v. Chevron Corp.*,
791 F. Supp. 2d 13 (D.D.C. 2011) .......... 12

*Pigford v. Veneman*,
225 F.R.D. 54 (D.D.C. 2005) .......... 13

*Sackman v. Liggett Grp., Inc.*,
167 F.R.D. 6 (E.D.N.Y. 1996) .......... 4

**Uzlyan v. Solis*,
706 F. Supp. 2d 44 (D.D.C. 2010) .......... 10

*Voltage Pictures, LLC v. Vazquez*,
277 F.R.D. 28 (D.D.C. 2011) .......... 8

*WaterLegacy v. EPA*,
300 F.R.D. 332 (D. Minn. 2014) .......... 3

*Wiggins v. Phillip Morris, Inc.*,
853 F. Supp. 457 (D.D.C. 1994) .......... 13

*Winmar Constr., Inc. v. Iron Kingdom, Inc.*,
No. 24-968 (JEB), 2024 WL 3338922 (D.D.C. July 9, 2024) .......... 7

**RULES:**

Fed. R. Civ. P. 12(f) .......... 9

Fed. R. Civ. P. 24(a) .......... 2

## TABLE OF AUTHORITIES—CONTINUED

Page(s)

Fed. R. Civ. P. 24(a)(2) ....................................................................................................5

Fed. R. Civ. P. 24(b) ....................................................................................................9

Fed. R. Civ. P. 24(b)(3)....................................................................................................8

**REGULATION:**

40 C.F.R. § 703.7(f) ....................................................................................................11

**OTHER AUTHORITY:**

5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1380 (3d ed. Supp. 2012)....................................................................................................10

## INTRODUCTION

This case is a reverse-Freedom-of-Information-Act (FOIA) challenge to the Environmental Protection Agency's (EPA's) decision to disclose Inhance Technologies LLC's (Inhance's) confidential business information, which was submitted to EPA under claims of protection during investigation and enforcement proceedings into Inhance's fluorination process. Fluorination is a chemical process used for decades to impart a protective barrier in plastic containers. After EPA and Inhance discovered that fluorination can unintentionally create minute amounts of per-and polyfluoroalkyl substances (PFAS) as impurities in the product, Inhance voluntarily launched an extensive—and highly successful—research-and-development program to improve its process and minimize the risk of PFAS. Inhance then turned over confidential records from its research-and-development program to EPA during an administrative process under Section 5 of the Toxic Substances Control Act (TSCA).

EPA recently determined that some of Inhance's highly confidential research-and-development data should be released in response to a FOIA request. The sole basis for EPA's decision—and the central issue in this reverse-FOIA challenge—was the agency's determination that Inhance had failed to substantiate that it would be competitively harmed by the disclosure under the applicable TSCA regulations. Understanding the competitive nature of the barrier plastics industry is therefore essential to contextualizing this dispute.

Inhance filed its motion for summary judgment and supporting brief on September 19. *See* ECF Nos. 29, 29-1. In it, Inhance included two brief references to a letter written by BP Polymers—one of Inhance's key competitors—to EPA during the agency's administrative process, which EPA included in the public administrative record in resulting litigation. Inhance said:

> In the underlying agency proceeding that was the target of the FOIA request, for example, EPA received documents from BP Polymers, a competitor promoting a

> PFAS-free alternative barrier technology. BP Polymers even pushed the agency for release of certain redacted information in Inhance's economic-impact analysis to allow competitors to "respond to any potential misinformation about alternative technologies in the marketplace."

Summary Judgment Br. at 33 (citations omitted). Inhance also explained that if its confidential data were released, "competitors could then leverage" "potential weaknesses of Inhance's process" "to promote their own alternative technology. This is more than mere speculation, given the submission BP Polymers made to EPA making precisely this point." *Id.* at 29 (citation omitted).

BP Polymers takes umbrage with these statements. Jumping through a set of puzzling inferences, it has concluded that Inhance's brief "creat[es] the false impression that BP Polymers supports [Inhance's] position" in this reverse-FOIA challenge. BP Polymers Br. at 8. BP Polymers now seeks to intervene in the present suit for the limited purpose of objecting to something Inhance never said, seeking relief the Federal Rules of Civil Procedure do not offer. This Court should deny intervention. And the Court should additionally decline to exercise its discretion to strike any of the statements to which BP Polymers objects.

## ARGUMENT

### I. BP POLYMERS DOES NOT MEET THE STANDARDS FOR INTERVENTION AS OF RIGHT.

BP Polymers has not demonstrated it has a sufficient interest supporting a right to intervene. Intervention as a matter of right is appropriate "[o]n timely motion" only when the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Rule 24(a) sets forth four factors: "(1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties." *Parker v. John Moriarty &*

*Assocs.*, 319 F.R.D. 18, 21 (D.D.C. 2016). Intervenors must also satisfy Article III standing. *See Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013).

Although BP Polymers insists that the federal rules call for "flexibility" for unconventional motions such as this one, *see* BP Polymers Br. at 5, these minimum requirements still must be satisfied, as the cases BP Polymers cites plainly acknowledge. *See, e.g.*, *WaterLegacy v. EPA*, 300 F.R.D. 332, 339 (D. Minn. 2014) (finding movant "me[t] the criteria for intervention as of right"). Because BP Polymers does not meet these criteria, this Court should deny BP Polymers' motion to intervene as of right.

**A. BP Polymers Has No Cognizable Interest Supporting Intervention.**

BP Polymers' motion to intervene suffers from a key flaw: The company has no "legally protected interest . . . that may be prejudiced by this litigation." *Biden v. IRS*, 752 F. Supp. 3d 97, 116 (D.D.C. 2024). To support intervention, BP Polymers must assert a "legal interest" rather than merely an interest "of a general and indefinite character." *Id.* at 113 (citation omitted).

BP Polymers believes that it should be allowed to intervene to "defend[ ] its reputation." BP Polymers Br. at 6. But, as another court in this district recently recognized, "bare reputational concerns do not create an interest supporting intervention as of right." *Biden*, 752 F. Supp. 3d at 116 (denying intervention on that basis). Other courts have held the same. *See, e.g.*, *Flynn v. Hubbard*, 782 F.2d 1084, 1093 (1st Cir. 1986) ("[A] party's reputation interest has not been found sufficient to require intervention as of right."); *Floyd v. City of New York*, 302 F.R.D. 69, 100 (S.D.N.Y. 2014) (denying intervention premised on alleged reputational harm from findings made by the court); *see also id.* at 104 (collecting cases).

Nor has BP Polymers cited any authority that suggests otherwise. The single case it cites in support expressly *declined* to hold that allegations of mere reputational harm supported

intervention. *See Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 21 (E.D.N.Y. 1996) (granting limited intervention to object to discoverability of documents subject to attorney-client and work-product privileges but finding it "need not reach" whether a "potential adverse impact" on reputation would also support intervention). Without a cognizable interest, BP Polymers' motion falters out of the gate.

**B. BP Polymers' Purported Interest Is Not Impaired.**

Even if a reputational interest alone were sufficient to justify intervention, BP Polymers has not shown that its reputation has been or is likely to be impaired. To warrant intervention, a movant must identify an interest "of such a direct and immediate character" that it will "either gain or lose by the direct legal operation and effect of the judgment." *See, e.g.*, *Defenders of Wildlife v. Jackson*, 284 F.R.D. 1, 6 (D.D.C. 2012) (citation omitted), *aff'd in part, appeal dismissed in part sub nom. Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013).

BP Polymers takes issue with two brief mentions of a letter it wrote to EPA. In its summary-judgment brief, Inhance stated that BP Polymers "pushed the agency for release of certain redacted information in Inhance's economic-impact analysis to allow competitors to 'respond to any potential misinformation about alternative technologies in the marketplace.' " Summary Judgment Br. at 33 (quoting the letter). And Inhance pointed to the letter in support of its own argument that competitors could "leverage [Inhance's confidential data] to promote their own alternative technology," a risk rising above mere speculation "given the submission BP Polymers made to EPA making precisely this point." *Id.* at 29. According to BP Polymers, these statements will "compromise" its "credibility." BP Polymers Br. at 7.

BP Polymers' hypothetical concern rests on a misreading of Inhance's statements. First, BP Polymers appears to fault Inhance for suggesting that BP Polymers wrote the letter to EPA with

the intent to "support Inhance's arguments in this matter." BP Polymers Br. at 11; *see also id.* at 7. BP Polymers' confusion on this point is difficult to understand, as Inhance clearly explained in its summary-judgment motion that BP Polymers submitted the letter to EPA "[i]n the underlying agency proceeding that was the target of the FOIA request," which necessarily predated this FOIA dispute. Summary Judgment Br. at 33.

It is unclear how BP Polymers concluded these statements will similarly mislead customers to more broadly believe BP Polymers "support[s] Inhance's position" in this reverse-FOIA case. BP Polymers Br. at 5. Indeed, BP Polymers' interpretation of the brief runs counter to the very point Inhance made in that document: that BP Polymers is a competitor *adverse* to Inhance's interests and capable of using Inhance's confidential information to enhance its ability to compete in the market. *See* Summary Judgment Br. at 29 (making this argument). BP Polymers itself repeatedly makes a similar point about competition throughout its motion—on this point, the parties are aligned. *See, e.g.*, BP Polymers Br. at 2 ("BP Polymers is an active market participant, promoting its PFAS-free barrier resin additive."); *id.* ("BP Polymers . . . promote[s] its product not only for monetary gain, but in an effort to expand the use of more eco-friendly products in order to eliminate PFAS."); *id.* at 5 (acknowledging BP Polymers previously petitioned EPA for "release of unredacted information" from Inhance); *id.* at 7 (describing its product as an "alternative to fluorination, which creates and spreads PFAS").

All this to say that, even assuming for the sake of argument that reputational concerns could be addressed through intervention, BP Polymers has not shown (nor could it) that anything stated in the summary judgment brief may "as a practical matter impair or impede" its ability to protect its reputation. Fed. R. Civ. P. 24(a)(2).

**C. BP Polymers Is Adequately Represented In This Action.**

Nor can BP Polymers establish that its intervention is needed in this case. There are already two sets of parties to this action that oppose Inhance's reverse-FOIA claims: EPA, and intervenor-defendants Public Employees for Environmental Responsibility (PEER) and the Center for Environmental Health (CEH). Even if EPA is for some reason incapable of adequately representing BP Polymers' interests due to its governmental status, BP Polymers has not explained why the existing intervenor-defendants cannot do so. BP Polymers Br. at 8 (focusing argument on purported inadequate representation by "government agencies").

The omission is not inadvertent: For years, PEER and CEH have touted the supposed availability of alternatives to Inhance's fluorination technology, citing BP Polymers' product specifically. *See* Summary Judgment Br. at 11–12. In litigation in the Eastern District of Pennsylvania, for example, the groups described BP Polymers and its product in favorable terms—even submitting a declaration signed by BP Polymers' Chief Operating Officer to buttress PEER and CEH's favorable characterization of BP Polymers' product. Summary Judgment Reply Br. at 15, *United States v. Inhance Techs., LLC*, No. 5:22-cv-05055 (E.D. Pa. July 14, 2023), ECF No. 51 ("The attached declaration of Kevin Callahan, Chief Operating Officer of BP Polymers LLC, describes the benefits of one such proven technology[.]"). At a minimum, BP Polymers should not be permitted to intervene now, before PEER and CEH have even filed their summary-judgment brief taking a position on competition, as "any potential divergence of interests is too speculative to afford [] the right to intervene at this time." *Friends of Earth v. Haaland*, No. CV 21-2317 (RC), 2022 WL 136763, at *5 (D.D.C. Jan. 15, 2022) (denying company's intervention request without prejudice where association to which it belonged had already intervened and appeared well-positioned to represent its members' interests).

**D. BP Polymers Lacks Standing To Intervene.**

BP Polymers also fails to demonstrate standing to participate in this suit. It is "circuit law that intervenors must demonstrate Article III standing," which "requires a showing of injury-in-fact, causation, and redressability." *Deutsche Bank*, 717 F.3d at 193. "Rule 24 and standing requirements are similar," *id.* at 191, and BP Polymers lacks standing for the same reason it is not entitled to intervene as a matter of right: It has not alleged a sufficient injury.

An Article III injury must be both "concrete and particularized" to pass muster. *Parker*, 319 F.R.D. at 21 (citation omitted). Vague allegations of reputational harm do not count. As this Court recently explained, such harm "typically gives rise to a cognizable injury in one of two situations": Either the harm causes "loss of clients or other business" or a "reputation is damaged as a result of public stigmatization." *Winmar Constr., Inc. v. Iron Kingdom, Inc.*, No. 24-968 (JEB), 2024 WL 3338922, at *4 (D.D.C. July 9, 2024) (citation omitted). But BP Polymers "does not connect its purported reputational hit to any allegation that it has actually lost business, as required for standing." *Id.*

Instead, BP Polymers claims that Inhance's brief reference to BP Polymers "*threatens* harm," arguing that "*[i]f BP Polymers is perceived as being used by Inhance* . . . that *could* severely compromise their credibility with customers." BP Polymers Br. at 7 (emphases added). Putting aside that it is unclear what the first part of that allegation means, its allegation of injury is nothing short of speculative. To establish standing based on future reputational injury, BP Polymers would have to show that the harm it apparently anticipates is "actual or imminent, not conjectural or hypothetical." *Mayor and City of Baltimore v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 738 F. Supp. 3d 1, 6 (D.D.C. 2024).

Nothing in BP Polymers' motion shows that customers or the public will likely perceive BP Polymers negatively merely because its name was mentioned in passing as having submitted comments to a federal agency. Tellingly, BP Polymers does not seek intervention in order to file a substantive opposition to Inhance's summary judgment motion. Instead, it seeks only to strike a few sentences from Inhance's brief on reputational grounds. As explained above, there is no reason to believe that Inhance's statements "creat[e] the false impression that BP Polymers supports [Inhance's] position," BP Polymers Br. at 8, when this interpretation would contradict the very argument Inhance made. Nor has BP Polymers shown how even if that were the message a reader took away, such a misimpression would cause BP Polymers harm. BP Polymers thus lacks standing to intervene as of right.

## II. BP POLYMERS DOES NOT MEET THE STANDARDS FOR PERMISSIVE INTERVENTION.

Permissive intervention is likewise unwarranted. Federal Rule 24(b) allows courts to permit intervention "[o]n timely motion" when a person "has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion to grant or deny intervention, a court will consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), and whether intervention "will significantly contribute to the just and equitable adjudication of the legal question presented." *Environmental Integrity Project v. McCarthy*, 319 F.R.D. 8, 12 (D.D.C. 2016) (citation omitted).

Permissive intervention is "inappropriate" in cases like this one, where the would-be intervenor has no "legally protected interest sufficient to warrant intervention" and "participation as an intervenor would consequently not further resolution of the case." *Voltage Pictures, LLC v. Vazquez*, 277 F.R.D. 28, 33 (D.D.C. 2011). For this reason, courts in this district routinely deny

permissive intervention where the movant lacks Article III standing. *See, e.g.*, *Mayor of Baltimore*, 738 F. Supp. 3d at 12; *Keepseagle v. Vilsack*, 307 F.R.D. 233, 245–246 (D.D.C. 2014).

Moreover, BP Polymers' motion shares no "common question" with the underlying FOIA dispute. Fed. R. Civ. P. 24(b). Granting intervention under these circumstances would cause unnecessary delay and inject irrelevant issues into this case. *See Center for Biological Diversity v. United States Fish & Wildlife Serv.*, 340 F.R.D. 1, 6 (D.D.C. 2021) (denying permissive intervention where movant had no "legally protected interest" and intervention "could lead to undue delay"). This Court should accordingly exercise its discretion and deny BP Polymers' motion for permissive intervention.

## III. THERE IS NO BASIS FOR STRIKING INHANCE'S TWO STATEMENTS REFERRING TO BP POLYMERS FROM ITS SUMMARY-JUDGMENT MOTION.

In addition to intervention, BP Polymers seeks to strike portions of Inhance's summary-judgment brief under Federal Rule of Civil Procedure 12(f), claiming that certain statements are irrelevant and misleading. BP Polymers Br. at 11. Rule 12(f) permits courts in their discretion to "strike from a pleading . . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "In considering a motion to strike, courts will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denial of the motion to strike." *Moore v. United States*, 318 F. Supp. 3d 188, 190–191 (D.D.C. 2018).

Like its motion to intervene, BP Polymers' accompanying motion to strike should be denied. First, Rule 12(f) does not authorize courts to strike portions of a summary judgment brief as opposed to a pleading. Second, Inhance's references to BP Polymers are directly relevant to competitive harm—the central issue in this case—and are neither misleading nor prejudicial.

### A. Inhance's Memorandum In Support Of Summary Judgment Is Not Subject To Rule 12(f) Of The Federal Rules Of Civil Procedure.

Rule 12(f) does not extend to statements made in a summary-judgment brief. It "authorizes only the striking of pleadings." *Bey v. Washington Metropolitan Area Transit Authority*, 341 F. Supp. 3d 1, 13 (D.D.C. 2018) (denying motion to strike objections filed in support of opposition to motion for summary judgment); *see also, e.g.*, *Henok v. Chase Home Fin., LLC*, 925 F. Supp. 2d 46, 52 (D.D.C. 2013) (" '[M]otions, affidavits, briefs and other documents [are] outside of the pleadings' and are not subject to being stricken." (second alteration in original) (quoting 5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1380 (3d ed. Supp. 2012))). The Federal Rules of Civil Procedure thus do not offer the remedy BP Polymers seeks, and its request can be denied on that basis alone.

### B. Inhance's Statements Are Relevant And Not Prejudicial Or Inflammatory.

Even if this Court retains inherent authority to strike statements made in summary judgment briefing, that sort of relief is not warranted here. A motion to strike is a "drastic remedy." *Uzlyan v. Solis*, 706 F. Supp. 2d 44, 51 (D.D.C. 2010). Courts "disfavor motions to strike" and will generally grant them "only if the portions sought to be stricken are prejudicial or scandalous." *Nwachukwu v. Rooney*, 362 F. Supp. 2d. 183, 189–190 (D.D.C. 2005).

These are high bars. "An allegation is prejudicial or 'scandalous' when it 'unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.' " *Estate of Fakhoury v. Islamic Republic of Iran*, No. 21-1218 (JDB), 2022 WL 3355799, at *7 (D.D.C. Aug. 15, 2022) (quoting *Uzlyan*, 706 F. Supp. 2d. at 58)); *see also Uzlyan*, 706 F. Supp. 2d. at 58 (noting that in the absence of "pejorative adjectives" or "colorful language," allegations that merely "cast the defendant in a 'derogatory light' " are insufficient to support a motion to strike). Moreover, allegations are irrelevant only when "it is

clear" that they "can have no possible bearing on the subject matter of the litigation." *Estate of Fakhoury*, 2022 WL 3355799, at *7 (quoting *Jackson v. Starbucks Corp.*, No. 19-1487 (RC), 2020 WL 3791873, at *4 (D.D.C. July 7, 2020)). Neither of the statements that BP Polymers complains about meet those demanding standards. Inhance's statements are relevant to its reverse-FOIA challenge and do not reflect on BP Polymers' moral character or prejudice its interests. There is accordingly no basis for striking them.

Take relevancy first. The central issue in this reverse-FOIA challenge revolves around EPA's determination to release Inhance's confidential business information after (1) first flouting TSCA's statutory obligation to provide notice of any dispute regarding Inhance's confidentiality claims upon receipt; and (2) belatedly finding that Inhance is unlikely to suffer competitive harm from disclosure—despite failing to consider (or even address) information in the record substantiating such harm. *See* Summary Judgment Br. at 14, 28–36; *see also* 40 C.F.R. § 703.7(f) (setting forth the relevant confidentiality standard). The BP Polymers letter is relevant to the question of competitive harm: It demonstrates a competitor's direct interest in accessing and making use of information that Inhance claimed as confidential—and that EPA was on notice of this interest. It is directly material to the dispute, regardless of what BP Polymers subjectively hoped to achieve when it submitted the letter. *See Estate of Fakhoury*, 2022 WL 3355799, at *7 (denying motion to strike without determining movant's status as an intervenor because, although the statements "obviously offended" the movant, they were neither "irrelevant" nor "needlessly inflammatory").

BP Polymers also takes an unusually narrow view of the relevancy standard by suggesting it is somehow improper to corroborate an argument with additional background information. *See* Summary Judgment Br. at 10 (arguing that "general statements about the competitive

landscape . . . [are] irrelevant (immaterial) to the specific, technical value of Inhance's unreleased data"). "[I]t is routine for parties to provide the Court with a certain amount of background information that is not directly relevant to the merits of the claim or motion at issue." *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 22 (D.D.C. 2011). "[B]ackground information" and even "misstatements of fact" do not meet Rule 12(f)'s high bar. BP Polymers itself seemingly recognizes the same thing. *See, e.g.*, Callahan Decl. ¶¶ 6, 14–15 (ECF 34-2); *see also Bond v. United States Dep't of Justice*, 828 F. Supp. 2d 60, 72 n.7 (D.D.C. 2011) (denying motion to strike and noting that plaintiff did not "move to strike . . . with clean hands," as his motion also "contain[ed] frivolous and irrelevant information"). Parties may brief the backdrop of the dispute without tripping over the lines drawn by Rule 12(f). *See, e.g.*, *id.* at 72 ("[H]owever unflattering the cited facts about [plaintiff's] past may be, this information provides context to his history of litigation and the basis" for his claims.); *see also Crawford v. Barr*, No. 17-798 (JEB), 2019 WL 6525652, at *4 (D.D.C. Dec. 4, 2019) ("A motion to strike requires more . . . than merely an assertion that an unpleasant accusation lodged against it will ultimately be disproved.").

Moreover, to the extend BP Polymers argues that it is "not interested in any of Inhance's confidential business information," Callahan Decl. ¶ 14, the statements in its own motion suggest otherwise. *See, e.g.*, BP Polymers Br. at 5 (explaining that its letter to EPA "argued for the release of unredacted information" and "expressed concern about Inhance's biased and redacted assessment about their products and their PFAS levels"). Indeed, BP Polymers repeatedly distinguishes its product on the basis of whether PFAS is present. *See* BP Polymers Br. at 1–3, 5, 7–10.

Nor are Inhance's statements prejudicial or scandalous. *Contra* BP Polymers Br. at 10. Inhance did no more than quote directly from a publicly available letter in support of an argument

(amply confirmed by BP Polymers' present motion) that competitors are likely to use Inhance's confidential information to gain a competitive advantage were that information disclosed. "Valid arguments" by an adversary are "[f]ar from impertinent" and do not support a motion to strike. *Bond*, 828 F. Supp. 2d at 72. Inhance's references to BP Polymers are not the type of inflammatory statements courts have found fit to strike. *Contra Pigford v. Veneman*, 225 F.R.D. 54, 56–58 (D.D.C. 2005) (striking "abusive language" from docketed notice following attorney's oral statements implying opposing counsel was racist, dishonest, and reckless); *Wiggins v. Phillip Morris, Inc.*, 853 F. Supp. 457, 457–458 (D.D.C. 1994) (striking from a complaint allegations about another employee's illicit drug usage because they had no relevance to plaintiff's claim).

There is no basis for striking Inhance's brief references to BP Polymers in its summary-judgment brief in these circumstances. If anything, BP Polymers' present motion underscores the very competition central to Inhance's reverse-FOIA challenge. It is because of this competition that Inhance's sensitive and proprietary research-and-development data must remain secure.

## CONCLUSION

For all these reasons, BP Polymers' Motion to Intervene and to Strike should be denied.

Dated: November 12, 2025

Respectfully submitted,

/s/ *Susan M. Cook*
Susan M. Cook (D.C. Bar No. 462978)
Adam Kushner (D.C. Bar No. 426344)
Marlan Golden (D.C. Bar No. 1673073)
Jacob T. Young (D.C. Bar. No. 90014334)
Carly M. Heying (D.C. Bar No. 90029062)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
susan.cook@hoganlovells.com

J. Tom Boer (D.C. Bar. No. 469585)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: (415) 374-2336
tom.boer@hoganlovells.com

*Attorneys for Plaintiff Inhance Technologies LLC*