**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, et al., | |
| *Plaintiffs*, | CIVIL ACTION NO. 24-445 (JEB) |
| v. | |
| ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| *Defendants*. | |
| | |
| INHANCE TECHNOLOGIES, LLC, | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 25-980 (JEB) |
| LEE ZELDIN, in his official capacity as ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| *Defendant*. | |

**OPPOSITION TO MOTION TO STAY SUMMARY JUDGMENT BRIEFING**

Paula Dinerstein, DC Bar # 333971
Colleen Zimmerman, DC Bar # 90003410
Public Employees for Environmental
Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 464-2293
czimmerman@peer.org
*Attorneys for Defendant-Intervenor and*
*Plaintiff PEER*

Robert M. Sussman, DC Bar # 226746
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net
*Attorney for Defendant-Intervenor and*
*Plaintiff Center for Environmental Health*

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ………………………………………………………1

BACKGROUND……………………………………………………………………………...6

1.  These Consolidated Cases Involve a Single FOIA Request, One Set of Documents and Common Issues of Law……………………………………………………………6

2.  Central to Both Cases Is a Single Body of Disputed Documents and a Single EPA CBI Determination Addressing These Documents …………………………………...6

3.  All Three Summary Judgment Motions are Anchored in EPA's CBI Determination and Raise Overlapping and Interconnected Issues…………………………………7

4.  The Stay Motion Would Prevent PEER/CEH from Litigating the Application of TSCA's Mandatory Disclosure Requirements to the Testing Documents…………9

ARGUMENT………………………………………………………………………………...10

I.    There Was Never an Agreement Between the Parties to Limit Summary Judgment Briefing to Inhance's Claims in its Reverse-FOIA Case………………………11

II.   Staying Briefing on the PEER/CEH Motion Would Violate Their Rights Under FOIA and Put Unnecessary Burdens on the Parties and Court…………………14

III.  With Very Limited Exceptions, the PEER/CEH Motion Does Not Inject New Documents into these Cases……………………………………………………15

CONCLUSION……………………………………………………………………………...17

**INTRODUCTION AND SUMMARY**

Center for Environmental Health (CEH) and Public Employees for Environmental Responsibility (PEER), plaintiffs and intervenor-defendants in these consolidated cases, oppose the February 20, 2026 motion of Inhance Technologies LLC (Inhance) and the Environmental Protection Agency (EPA) to stay further briefing on the February 6, 2026 PEER/CEH summary judgment motion. ECF 55.

The stay proposed by Inhance and EPA would upend the briefing schedule negotiated by the parties and freeze resolution of PEER/CEH's claims under the Freedom of Information Act (FOIA) and the Toxic Substances Control Act (TSCA). Because further briefing on these claims would be halted, disclosure of heavily redacted documents that PEER/CEH requested under FOIA over three years ago would be significantly delayed and possibly blocked indefinitely.

These documents shed light on Inhance's extensive testing program to determine the presence and amounts of per- and polyfluoroalkyl substances (PFAS) formed during its fluorination of plastic containers. The PFAS found in these containers and their contents are highly toxic and persistent and accumulate in the blood of nearly all Americans. Because Inhance fluorinates approximately 200 million plastic containers per year that are used in numerous sectors of the U.S. economy, exposure to these PFAS is pervasive across the U.S. population. If disclosed, the Inhance testing documents would inform the public about the health threats that PFAS in fluorinated containers pose to millions of workers and consumers who use and handle these containers every day.

The two consolidated cases before the Court – a FOIA/TSCA action brought by PEER/CEH seeking disclosure and a reverse-FOIA action filed by Inhance to block disclosure – are closely intertwined. As EPA itself recognized, they address one set of documents, a common

1

set of facts, and a single body of laws and regulations. 4/9/25 Joint Status Report (JSR) ECF 23.

At issue in both cases are approximately 270 Inhance documents that together provide a broad

picture of the methods used in its testing program, the PFAS levels detected in a cross-section of

containers, and the implications of the test results for reducing PFAS formation. After searching

its files and identifying these documents, EPA conducted a single in-depth review to determine

whether they met the criteria for Confidential Business Information (CBI) in FOIA Exemption 4

and section 14 of TSCA. It found that some of the information in the documents warranted CBI

protection while other information should be made available to the FOIA requestors.  CBI

Determination Feb. 28, 2025, Administrative Record (AR) 5.

Following this Determination, the Court set a schedule for the three parties in these

consolidated cases – Inhance, PEER/CEH, and EPA – to file motions for summary judgment and

oppositions to the motions of the other parties. 6/5/25 Minute Order. Inhance's summary

judgment motion, filed on September 19, 2025, ECF  29, sought to block disclosure of

information that EPA found did not warrant confidential treatment. This information consists of

measurements of PFAS levels in fluorinated containers that EPA determined had no independent

commercial value. Then, on February 6, 2025, PEER/CEH both opposed the Inhance motion and

filed their own motion to require disclosure of the information that EPA determined should be

withheld. ECF  49 and 50. This information consists of compilations and analyses of the test data

that EPA found would cause competitive harm if disclosed. Finally, on the same day, EPA

opposed the Inhance motion and filed a separate motion defending disclosure of the documents

that Inhance sought to keep confidential. ECF 47 and 48.

Inhance's motion to stay further briefing on the PEER/CEH motion would stack the deck

heavily in its favor. On the one hand, the proposed stay would *allow* the company to continue

opposing disclosure of documents that EPA decided to release and seek a favorable ruling from the Court.  At the same time, by suspending further briefing on the PEER/CEH motion and delaying a decision by the Court, the stay would *prevent* PEER/CEH from advocating for disclosure of documents that EPA decided to withhold. The effect would be to maximize Inhance's ability to shield its documents from scrutiny but marginalize PEER/CEH by denying them the legal tools FOIA provides to compel expeditious access to government files. This would violate the FOIA rights of information requestors and reward the intransigence of opponents of disclosure who seek to circumvent FOIA's transparency policies.

Inhance couches this power play in legalistic language but, when examined closely, its motion misrepresents and distorts the law and the facts to achieve a result that is illegitimate, unwarranted, and unjust.

*First*, it is simply untrue that there was an agreement among all the parties to limit the ongoing briefing process to issues raised in Inhance's reverse-FOIA case and either drop entirely or delay for future briefing whether FOIA and TSCA required disclosure of additional information that EPA had decided to withhold. By allowing PEER/CEH to both oppose the Inhance motion and file their own summary judgment motion, the briefing schedule necessarily contemplated that they could seek broader relief than a simple denial of the Inhance motion. Otherwise, a summary judgment motion separate from their opposition to Inhance's motion would serve no purpose.

While the parties initially held open the option of a second round of briefing on "FOIA issues" for future discussion, PEER/CEH never committed to this approach and, in the JSR filed on January 9, 2026, ECF  41, flatly rejected it. As they explained in the JSR, PEER/CEH were "working diligently toward . . . filing their opposition to Inhance's September 19 summary

3

judgment motion and their own cross motion for summary judgment and . . . do not envision a

need for a further round of briefing beyond the summary judgment briefing now underway."

Inhance accepted PEER/CEH's position. Its portion of the JSR "propose[d] that the parties brief

any remaining issues in" the PEER/CEH FOIA case (No. 24-445) "consistent with the schedule

the Court set in" its December 8, 2025 minute order.  Id. at 4. The Court accepted this approach

while extending the deadlines slightly. Minute Order of 1/22/26. PEER/CEH's February 6, 2026

summary judgment motion did exactly what Inhance proposed and the Court ordered.

*Second*, to justify separate briefing tracks and judicial decisions on the FOIA and

reverse-FOIA claims, Inhance portrays the two consolidated cases as raising distinct and

unrelated issues. ECF 55-1. In fact, the opposite is the case. The cases were consolidated

precisely because they involve the same FOIA request for the same documents. The 270

documents common to both cases cannot be artificially segregated into FOIA and reverse-FOIA

bins.   Many of the documents in fact combine information that EPA decided to disclose with

information it decided to withhold. These documents should be addressed only once by the

parties and the Court. Reviewing and analyzing the same documents twice would be inefficient

and time-consuming.

Similarly, the applicable FOIA and TSCA caselaw and statutory requirements are the

same for all 270 documents. Interpreting and applying the same body of law in two sets of briefs

and judicial decisions would be duplicative. Thus, a two-track briefing process would cause

redundancy, delay, and confusion and place added burdens on the parties and the Court.

Principles of sound case management counsel against this approach.

*Third*, Inhance falsely asserts that the PEER/CEH motion has expanded the two cases to

sweep in a whole slew of new documents that have "not completed the procedural predicates for

FOIA litigation." ECF 55-1 at 6. Inhance then "requests that PEER and CEH's FOIA motion for summary judgment be stayed until the procedural requirements of TSCA and FOIA are met." Id. at 7. This is a smokescreen. All of the 270 testing documents at issue have in fact undergone the necessary TSCA and FOIA procedures, including resubstantiation of Inhance's CBI claims and a full EPA CBI review culminating in a final CBI Determination. Accordingly, contrary to Inhance, no further administrative action on these documents is necessary "before the parties can adequately litigate the lawfulness of EPA's nondisclosure." Id.

The only "new" documents before the Court are seven 2023 testing documents briefly discussed in the PEER/CEH summary judgment brief. ECF 53 at 45-46; ECF 52-2 at 205-311. Inhance is obviously familiar with these documents because it created and submitted them as a block to the EPA docket in the fall of 2023 to persuade it to forego regulatory action. The documents are described in the PEER/CEH Complaint and were the subject of extensive correspondence between the requestors and EPA before the Complaint was filed. ECF 1 ¶¶ 53-54, 56-57, 59. Although PEER/CEH filed a supplemental FOIA request in December 2023 to obtain the documents, ECF 52-2 at 538-540, they were never produced or addressed in EPA's February 2025 CBI Determination. The documents are similar in format and content to the 270 documents covered by the Determination and raise identical issues under FOIA and TSCA.

While there are obvious benefits to considering these documents during the ongoing summary judgment process, PEER/CEH have filed a new FOIA request for their disclosure. Should the Court so desire, it could wait to consider the documents until EPA has taken action on their new FOIA request. However, this should not delay consideration of the interrelated issues concerning the 270 documents that were subject to EPA's CBI Determination and are indisputably part of these consolidated cases.

*Finally*, Inhance wants to be excused from responding to the PEER/CEH motion because it has put the company "at a distinct disadvantage" and it does "not have sufficient time or space to respond to the[] new arguments" of PEER/CEH. ECF 56 at 1-2. The Court should not indulge this plea for sympathy.  There are five Inhance lawyers listed on its motion; the current briefing schedule gives Inhance five weeks to draft its opposition; Inhance is intimately familiar with the 270 documents at issue because it asserted and resubstantiated CBI claims for all of them and EPA addressed these claims in its CBI Determination;  and the legal issues raised by the documents are not new but have long been known to the parties. Inhance should be held to the current March 17, 2026 response date.

## BACKGROUND

### 1.  These Consolidated Cases Involve a Single FOIA Request, One Set of Documents and Common Issues of Law

In its May 15, 2025 Minute Order, the Court consolidated the FOIA case filed by PEER/CEH with the reverse-FOIA case filed by Inhance. The Court's consolidation order followed an unopposed motion by PEER/CEH emphasizing that "both cases present the same issue: whether test data on the presence and amounts of PFAS in fluorinated containers can be properly withheld as confidential business information under FOIA Exemption 4 and section 14 of TSCA. In both cases, resolution of this issue requires application of the same body of law to the same set of facts." ECF  24. In an earlier filing, EPA likewise supported consolidation because "both cases arise from the same series of facts: the same records are at issue in both matters and both cases result from EPA's response to the same FOIA request."  ECF 23 at 3.

### 2.  Central to Both Cases Is a Single Body of Disputed Documents and a Single EPA CBI Determination Addressing These Documents

As this case has progressed, the interrelationship between the FOIA and reverse-FOIA actions has only become more pronounced. While Inhance and EPA now try to portray the cases

as raising separate and unrelated issues, a cursory glance at the three summary judgment motions demonstrates the commonality of the key facts, issues raised, and governing legal requirements.

With very limited exceptions, the Inhance, EPA, and PEER/CEH summary judgment motions address the same 270 documents. They all relate to Inhance's multi-year testing program to determine the levels of nine highly toxic PFAS formed during the company's fluorination process for plastic containers. Their common characteristics were the result of PEER/CEH's narrowing of their FOIA request in mid-2024 to expedite their disclosure. ECF 19. at 2-3 n. 1. As narrowed, the disputed documents are very similar in format and content: they all either present the Inhance test results or compile and analyze the test data in light of container characteristics, production volumes, processing conditions, anticipated uses, and other factors.

After sifting through a larger document universe, EPA identified approximately 270 documents that met this description. It then launched a comprehensive review of these documents to determine whether they contained CBI that should be withheld from disclosure under FOIA Exemption 4 and TSCA section 14. During this review, EPA afforded Inhance a full opportunity to substantiate the basis for its CBI claims, as required by TSCA section 14(f). AR 2-3. Indeed, EPA granted Inhance nearly two additional months to complete the process. ECF 18 at 3. Its submissions to EPA argued at length that nearly all of the redacted information in the 270 documents required CBI protection because their disclosure would be likely to cause substantial harm to Inhance's competitive position. There can be no dispute that Inhance was and is intimately familiar with all 270 documents and took full advantage of its statutory right to substantiate its CBI claims.

**3.    All Three Summary Judgment Motions are Anchored in EPA's CBI Determination and Raise Overlapping and Interconnected Issues**

EPA's final CBI Determination, released on February 28, 2025, partially granted and partially denied Inhance's CBI claims. AR 5. EPA upheld CBI protection for process information, standard operating procedures for testing and sampling, and customer and customer product information. However, it denied protection to test data quantifying the concentrations of PFAS measured in fluorinated containers. On April 2, 2025, Inhance filed its reverse-FOIA suit to enjoin release of the redacted portions of the 270 documents that EPA intended to disclose. No. 24-980, ECF 1.

The summary judgment motions of all three parties in this case raise intertwined factual and legal issues under TSCA and FOIA. Inhance's motion argues that, under TSCA section 14(c), none of the redacted portions of the 270 documents can be disclosed because their release will cause substantial harm to its competitive position. ECF 29. Relying on the same TSCA provisions, EPA and PEER/CEH oppose the Inhance motion because the PFAS levels measured in the Inhance testing program in fact lack competitive value and withholding them is therefore unjustified under FOIA and TSCA. ECF 47, 48, 53. In their summary judgment motion, PEER/CEH go further, arguing that EPA must disclose *all* redacted information in the 270 documents. They maintain both that EPA was mistaken in concluding that release of some of these documents would cause competitive harm and that TSCA section 14(b)(2)-(3) mandates disclosure of health and safety data even if the information is otherwise CBI. ECF 52.

Not surprisingly, the parties are on different sides of these issues. For example, PEER/CEH maintain that Inhance cannot show competitive harm for all the redacted information that EPA deemed CBI because there are no other companies who conduct post-mold fluorination and could use PFAS test data to compete with Inhance. ECF 54 at 22-26, 28-29.  EPA's CBI Determination, however, reached a different conclusion because it assumed without direct

evidence that there are other post-mold fluorination practitioners who could benefit competitively by knowing the details of PFAS formation in the Inhance process and which process changes might reduce PFAS levels. PEER/CEH also argue that the Inhance test data is not "confidential and commercial information" subject to FOIA Exemption 4 – another issue that EPA bypassed in its Determination. ECF 53 at 20-22.

Given their particular interests and perspectives, the different positions of the parties are normal and predictable. What is important is that the issues addressed in their summary judgment motions involve the same facts and a common set of documents and require the Court to apply the same TSCA and FOIA requirements.

**4.    The Stay Motion Would Prevent PEER/CEH from Litigating the Application of TSCA's Mandatory Disclosure Requirements to the Testing Documents**

As an alternative ground to the lack of competitive harm for disclosing all the redacted information in the 270 documents, the PEER/CEH motion argues that the information falls within the TSCA definition of "health and safety study" and therefore is subject to mandatory disclosure under TSCA section 14(b)(2)-(3). ECF 53 at 29-45. This issue has been central to both the FOIA and reverse-FOIA cases since their inception.

As EPA started producing documents in response to their FOIA request in mid-2023, PEER/CEH were alarmed by the extensive redactions of information that Inhance claimed was CBI. They immediately objected to EPA's withholding of this information because it was part of one or more "health and safety studies" that Congress directed EPA to disclose under section 14(b) of TSCA. Complaint ECF 1, ¶¶53-54. PEER /CEH conveyed this position to EPA in multiple letters and a meeting in late 2023. Id. ¶¶ 56-59, 68.  However, when EPA still refused to release the testing documents, the groups filed suit under FOIA on February 14, 2024. Their

Complaint prominently highlights EPA's obligation to disclose the testing documents because they are TSCA health and safety studies. Id. ¶¶85-92.

Initially, plaintiffs sought to file a summary judgment motion in their FOIA case premised on EPA's violation of its TSCA disclosure obligations for health and safety data. 04/24/24 JSR ECF 12 at 2-5. However, the motion was put on hold after EPA insisted that disclosure was premature until completion of its CBI review of the disputed documents. Nonetheless, the groups remained frustrated by the slow pace of the CBI review and, in the October 22, 2024 JSR, reiterated that "TSCA in fact directs EPA to immediately disclose health and safety data under FOIA and precludes the Agency from conducting a lengthy CBI substantiation and determination process as it has done here." ECF 19 at 2.

To no one's surprise, the February 6, 2026 PEER/CEH summary judgment motion argues at length that the testing documents are health and safety studies that EPA cannot withhold under TSCA. ECF 53 at 29-45. Inhance itself addressed this issue fully in its motion, arguing that the TSCA definition of health and safety study is inapplicable to the 270 testing documents. ECF 29-1 at 18-20.  EPA's motion likewise acknowledged the issue, observing that "[b]ecause EPA denied Inhance's CBI claims on other grounds, EPA does not need to address at this time whether the contested information is from a health and safety study. . . not protected from disclosure under 15 U.S.C. § 2613(b)(2)." ECF 48 at 23 n. 4.

In light of this extensive history, EPA and Inhance cannot possibly maintain that they were blindsided by the inclusion of the health and safety study issue in the PEER/CEH summary judgment motion. Yet if granted, their motion to stay briefing would  postpone or prevent the groups from presenting this central issue to the Court.

**ARGUMENT**

I.      **There Was Never an Agreement Between the Parties to Limit Summary Judgment Briefing to Inhance's Claims in its Reverse-FOIA Case**

Following consolidation, the Court directed the parties to confer on a schedule for filing and briefing summary judgment motions on the outstanding issues in the two cases. 04/15/2024 minute order. Inhance now claims that these discussions resulted in an agreement among the parties to limit the briefing process to issues raised in its reverse-FOIA case. This is untrue.

PEER/CEH would never have relinquished their ability to obtain summary judgment on FOIA claims they had pursued doggedly for over three years. This would have undermined the very reason for their FOIA request by requiring them to forgo their claim that the testing documents were part of a TSCA health and safety study and that *all* of the redacted information in the 270 documents require disclosure. Neither the JSRs filed by the parties nor the Court's scheduling orders compelled this result.

The June 23, 2025 JSR, ECF 27, noted that parties "propose[d] that briefing . . . begin[] with summary judgment briefing in the Freedom of Information Act/Administrative Procedure Act challenge brought by Inhance," with a possible second phase of briefing on remaining issues. However, PEER/CEH expressly reserved their position on a bifurcated briefing approach. Thus, the JSR submitted to the Court deferred a final decision on this approach "until after PEER and CEH have made a judgment about the scope of any remaining disputes" in the consolidated cases. Id. at 2-3. To enable that judgment, the JSR proposed that the parties "file a further joint status report to address these issues, including a proposed briefing schedule for this second phase of briefing, should any additional briefing be necessary." Id. at 3.

The Court's June 24, 2025, minute order adopted the schedule in the JSR but was silent on the bifurcated briefing process. The order provided for PEER/CEH and EPA to file oppositions to Inhance's summary judgment motion and their own motions for summary

judgment but did *not* address the scope of the issues they would present or whether the motions would apply to the Inhance reverse-FOIA case, the PEER/CEH FOIA action or both. Instead, the order simply instructed the parties to file another JSR on October 28, 2025.

By requiring the filing of both summary judgment motions and oppositions, the June 24, 2025 order presupposed that these submissions would address overlapping but not identical issues. Obviously, a separate summary judgment motion would have no purpose if it merely duplicated arguments in the opposition. Thus, PEER/CEH concluded that, while their opposition would contest Inhance's arguments against disclosure of information EPA found did not warrant CBI protection, their motion would seek disclosure of documents that EPA determined did contain CBI and would be withhold. They also interpreted the order to allow the motion to advance grounds for disclosure that the EPA Determination did not consider, including that all the testing documents were "health and safety studies" that TSCA required EPA to disclose even if they contained CBI. Inhance itself was apparently proceeding on the same premise as PEER/CEH. Anticipating that PEER/CEH's summary judgment motion would be based in part on TSCA's disclosure mandate for health and safety studies, the Inhance summary judgment motion argued that the disputed documents did not meet the TSCA health and safety study definition.  ECF 29-1 at 18-20.

After Inhance filed its summary judgment motion on September 19, 2025, there was a hiatus in the briefing schedule because of the government shutdown. Under the reconfigured schedule, the deadline for the final JSR was moved to January 9, 2026. 12/08/2025 minute order. Consistent with its interpretation of the Court's scheduling orders, the PEER/CEH portion of this JSR (ECF 41) emphasized that PEER/CEH were "working diligently toward . . . filing their opposition to Inhance's September 19 summary judgment motion and their own cross motion for

summary judgment" and "[a]t this time, . . . do not envision a need for a further round of briefing

beyond the summary judgment briefing now underway." ECF 41. As the groups explained:

> The current briefing process is focused primarily on documents furnished by Inhance to
> EPA that describe testing conducted by the company to determine PFAS levels in
> fluorinated plastic containers. The issues being briefed involve whether these documents
> are subject to disclosure under the Freedom of Information Act (FOIA) and the
> confidentiality provisions of section 14 of the Toxic Substances Control Act (TSCA).

In its portion of the JSR, Inhance also did not advocate a new round of briefing. Instead, it

"propose[d] that the parties brief any remaining issues in" the PEER/CEH FOIA case (No. 24-

445) *"consistent with the schedule the Court set in" its December 8, 2025 minute order.* ECF 41

at 4 (emphasis added). It then presented a chart incorporating the pre-existing briefing deadlines

and captioned it *Phase II Briefing (PEER v. EPA, 1:24-cv-445).* Id.

On January 21, 2026, PEER/CEH moved for a two-week extension to file their

opposition and summary judgment motion and for an increased page limit for their combined

memorandum in support. ECF  44. The motion pointed to "the large number of redacted Inhance

documents that must be reviewed, the need to understand the complex history of the EPA

investigation of Inhance and its fluorination process, and the multiple legal issues under FOIA

and TSCA that must be researched and addressed." The Court granted the motion to extend the

next day, and the parties then jointly moved to make proportionate adjustments in the other

briefing deadlines (ECF 44), resulting in the Court's 1/16/26 minute order resetting the schedule.

In seeking the extension, PEER/CEH made clear that their summary judgment motion

would be far broader in scope than its opposition,. However, neither Inhance nor EPA raised any

concern.  Nor did they assert that the revised briefing schedule was limited to Inhance's reverse-

FOIA claims.

In short, the Inhance/EPA claim that PEER/CEH "agreed" in the June 24, 2025 JSR to

limit briefing to the claims in Inhance's reverse-FOIA case and then violated this commitment by

filing a more expansive summary judgment motion on February 6, 2026 is pure revisionist history and should not influence the Court's ruling on the Inhance stay motion.

## II.     Staying Briefing on the PEER/CEH Motion Would Violate Their Rights Under FOIA and Put Unnecessary Burdens on the Parties and Court

As discussed above,  there is no bright line between the issues in the FOIA and reverse-FOIA cases. Instead, they are overlapping and interconnected in myriad ways that flow through both of the consolidated cases. Yet Inhance and EPA argue that the PEER/CEH summary judgment issues should be briefed, if at all, only after the Court decides the Inhance reverse-FOIA issues, a process that will result in substantial delay. This would be both unlawful and wasteful.

First, a bifurcated process would make immediate resolution of Inhance's dispute with EPA the central focus of these cases while putting the PEER/CEH claims on the back burner. Sidelining the FOIA issues after they provided the impetus for both cases would be contrary to FOIA's core objectives. The law is intended to "force increased expedition in the handling of FOIA requests" to achieve "greater transparency in support of open government." *Washington Lawyers' Comm. for Civil Rts. & Urb. Affairs v. U.S. Dep't of Just.*, 145 F.4th 63, 72 (D.C. Cir. 2025).  But Inhance's proposed stay would either extinguish PEER/CEH's rights under FOIA entirely or delay their judicial enforcement.  This would be a bitter pill  after the groups were denied access to the Inhance documents for over three years.

Second, under Rule 56 of the Federal Rules of Civil Procedure, PEER/CEH are entitled to file and receive a timely ruling on their summary judgment motion.  In fact, courts have recognized that "FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56." *Akel v. U.S. Dep't of Justice*, 578 F. Supp. 3d 88, 94–95 (D.D.C. 2021). Inhance's position that it should not have to respond to the PEER/CEH motion

would negate this favored mechanism for resolving FOIA cases and instead further Inhance's goal of keeping the redacted documents under wraps for as long as possible.

Equally important, artificially dividing the FOIA and reverse-FOIA issues into sequential briefing tracks rather than resolving them in a single process would violate principles of efficient case management. Requiring two separate sets of briefs on different schedules that result in separate decisions by the Court would mean addressing the same documents and legal issues twice – first in Inhance's reverse FOIA case and then in the PEER/CEH FOIA action.  The consequence would be redundancy and confusion as well as unnecessary burdens on the resources of the parties and the Court. The Court should not go down this road.

### III.    With Very Limited Exceptions, the PEER/CEH Motion Does Not Inject New Documents into these Cases

As noted above, the primary focus of the PEER/CEH summary judgment motion is the 270 testing documents addressed in the EPA CBI Determination. There is no dispute that these documents were within the scope the January 2023 FOIA request, were subject to resubstantiation of Inhance's CBI claims under section 14(f)(1) of TSCA, and were reviewed by EPA and determined to either qualify for CBI protection or to warrant disclosure because CBI criteria were not met. Plainly, these documents are ripe for judicial consideration as part of the ongoing summary judgment process.

Seeking to confuse matters, however, Inhance's stay motion fixates on the inclusion in the PEER/CEH summary judgment motion of seven testing documents it submitted to the EPA Significant New Use Notice (SNUN) docket in late 2023. ECF 56-1 at 4-5. These documents play a minor role in PEER/CEH's summary judgment brief. They are addressed in a short (two page) section urging the Court to find that they fall within the TSCA disclosure requirement for health and safety studies. ECF 53 at 46-47. However, Inhance emphasizes that the seven

documents have "not completed the procedural predicates for FOIA litigation," ECF 56-1 at 6.

Then, in a stunning leap in logic, it claims that *none* of the 270 documents addressed in the

PEER/CEH summary judgment motion can now be considered by the Court because several

"steps must be completed before the parties can adequately litigate the lawfulness of EPA's

nondisclosure." Id. at 7. Accordingly, Inhance "requests that PEER and CEH's motion be stayed

until the procedural requirements of TSCA and FOIA are met." Id.

   This request is extraordinarily overbroad.  Inhance's requested remedy plainly has no

relevance to the 270 documents (by far the bulk of the documents addressed in the PEER/CEH

motion) because all of these documents were examined in EPA's CBI Determination and

therefore *have met* the "procedural requirements of TSCA and FOIA." Yet Inhance nowhere

acknowledges this distinction but creates the misleading impression that *none* of the documents

addressed in the PEER/CEH motion are ripe for adjudication and the *entire motion* must be put

in abeyance.  At most, this claim may apply to the seven documents;. There is absolutely no

reason why briefing on the remaining documents for which PEER/CEH seek summary judgment

should not go forward under the current schedule.

    Inhance has no reason to be surprised and confused by the  the seven documents. It

submitted them as a group to the EPA SNUN docket in late 2023 in a last-ditch effort to ward off

regulatory action. ECF 53 at 16-19. The documents are described in detail in the Complaint in

this case (ECF 1 ¶¶ 53-54, 56-57, 59) and included in the document compendium accompanying

the PEER/CEH motion. ECF 52-2 at 205-311. Moreover, there are compelling reasons for

addressing the seven documents in the current summary judgment process. PEER/CEH's

December 2023 supplemental FOIA request (ECF 52-2 at 538-540) was intended to assure that

the documents were part of EPA's ongoing CBI review. While EPA asserts that the request is

16

outside the scope of this case, it is in fact referenced in the Complaint (ECF 1 ¶ 64) . And as explained in the PEER/CEH motion, the seven documents raise exactly the same issues as the 270 documents covered by the EPA CBI Determination and their CBI status under FOIA and TSCA can readily be resolved by the Court in this case. ECF 53 at 45-46.

Nonetheless, since the Agency did not produce the seven documents in response to the December 2023 supplemental FOIA request, PEER/CEH have again requested these and other 2023 testing documents under FOIA. This is not a reason for failing to consider them during the current briefing process. However, if the Court believes it is the best course, PEER/CEH would not oppose staying further briefing on the seven documents until EPA completes processing the new FOIA request. In this event, we would expect Inhance to respond to the remainder of the summary judgment motion on March 17, 2026 as scheduled.

## CONCLUSION

The motion to stay briefing should be denied and the parties should file remaining oppositions and replies according to the current briefing schedule.

Dated: March 2, 2026

Respectfully submitted,

/s/ *Colleen Zimmerman*
Paula Dinerstein, DC Bar # 333971
Colleen Zimmerman, DC Bar #90003410
Public Employees for Environmental Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 464-2293
czimmerman@peer.org

*Attorneys for Defendant-Intervenor PEER*

/s/ *Robert Sussman*
Robert M. Sussman, DC Bar # 226746
SUSSMAN & ASSOCIATES

17

3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net

*Attorney for Defendant-Intervenor CEH*